## ARKANSAS & LOUISIANA RAILWAY COMPANY *v.* HARRIS.

### Opinion delivered May 30, 1896.

RAILWAY COMPANIES — POSTING FREIGHT SCHEDULES — PENALTY.— Under the act requiring railroad companies to keep posted in every depot freight office printed schedules of freight rates, and providing that, for a violation of the act, they shall forfeit a certain sum, "to be recovered by a civil action by the party aggrieved," and that a notice of the violation, with a demand for reparation, must be served by the claimant (Act March 24, 1887, sec. 7, 12), the "reparation" contemplated by the act is compensation for injuries or wrongs suffered by reason of a railway company's failure to comply with the act, and only the person to whom reparation is due can be entitled to the penalty of the act.

SAME—NOTICE OF INJURY—SUFFICIENCY.—A notice to a railway company of a violation of the act requiring the posting of freight rates is insufficient if it fails to show how the claimant was injured by the failure to post such rates, the extent of his grievances, and the damages occasioned thereby.

Appeal from Sevier Circuit Court.

WILLIAM P. FEAZEL, Judge.

*Dodge & Johnson*, for appellant.

1. The complaint is fatally defective. It does not state facts to constitute a cause of action. It fails to

state *where* the defendant neglected to post its sched-
ules; the agent upon whom the notice was served; the
kind and character of notice served; to show any facts
as to how plaintiff was aggrieved, or whether he was
aggrieved at all.   All these facts were necessary to be
set up, not only in the notice, but in the complaint.

2.   The notice was not a compliance with the stat-
ute.   The statute is in derogation of the common law,
and must be strictly construed and complied with.
Fifteen days must be given to refund any overcharge,
or make other reparation.   The notice must make known
the grievance, in order that the company may make
reparation, and should state the amount of damages
claimed, etc.   The notice was fatally defective.

3.   No evidence was introduced to show any dam-
age or grievance.   The penalty could only be recovered
by *one aggrieved*.   There is not a scintilla of evidence
that appellee was *aggrieved* or damaged.   8 Pick. 514;
Suth. St. Const., sec. 359; 47 Md. 217; 13 Pick. 94;
Endl. Int. St., sec. 470, 471, 473, etc.; 11 Q. B. 731;
Sedgwick, Stat. Const. 76; 10 Pick. 383; 2 Exch. Div.
440, 448.

*W. S. Curran*, for appellee.

1.   It affirmatively appears that appellee was a
*bona fide* shipper over appellant's road, and thereby was
*aggrieved*.   Sec. 12 of the act declares who shall
recover, and it is unambiguous,—*the party aggrieved*.

2.   This is not a penal statute but a *remedial* one.
It was passed in pusuance of sec. 17, art. 10, Constitu-
tion, and was intended to correct abuses by adequate
penalties.   49 Ark. 265; 17 Wall. 567; 35 N. W. 118;
57 Ark. 120.

3.   The rates must be posted, as required by the
act.   9 So. 89.

4.   The notice is only required when there has been
a mistake or an overcharge to be corrected; but when

there is a wilful violation of the statute, and where notice would serve no useful purpose, none is required. 3 S. W. 323. See also 23 N. J. L. 373; 32 Fed. 722; 43 *id.* 37; 15 Pac. 775; 4 Neb. 58.

BATTLE, J. During the year 1893, Milton Harris resided at Nashville, in this state, and dealt in country produce. He purchased apples, hides, chickens, and eggs, and shipped them over the road of the Arkansas & Louisiana Railway Company. In this time, the railway company did not keep posted at its depot freight office at Nashville, in a conspicuous place, plainly and legibly printed schedules of its rates of freight and charges; and the consequence was, whenever Harris wished to find out what the charges for shipping any of his property on the railroad was, he asked the agent of the company for the information, and received it. Finally growing weary of this manner of doing business, he, on the 12th of December, 1893, gave to the agent of the company the following notice:

"State of Arkansas, County of Howard, Town of Nashville. To W. B. McDonald, agent of the Arkansas & Louisiana Railway Company, Nashville, Ark.: You are hereby notified that the Arkansas & Louisiana Railway Company has failed to comply with section seven (7) of the statute approved March 24, 1887, requiring a schedule of the rate of freight charges to be posted up in the depot freight office. I am the party aggrieved by this violation of the law, and I demand that said company make proper reparation to me for each and every day the law has been violated during the year last past. Given under my hand this 12th day of December, 1893. Milton Harris, by W. S. Curran, his attorney."

And, failing to receive the desired reparation within fifteen days, and being out of business, he brought this

action against the railway company to recover the statutory penalty of $50 to $1000 for each and every day in the year 1893 the company had failed to keep the schedule of rates of freight and charges posted at the Nashville depot freight office, and recovered judgment for $12,000, and the defendant appealed.

While the evidence adduced in the trial of the action was sufficient to show that no schedule was posted at any time during the year 1893 at the depot freight office at Nashville, and that the notice in writing which we have set out in this opinion was given, and the other facts which we have stated, there was no evidence that Harris received any actual injury. He testified, and could not tell when he first examined to see whether or not the schedule had been posted, nor how often he had looked. He testified that he usually went to the agent of the company, and inquired as to rates of freight, which were always given to him upon request. Upon such evidence, was he entitled to recover a penalty?

This action is based on sections seven and twelve of the act entitled, "An act to prevent unjust discrimination and exhorbitant charges by railroads," etc., approved March 24, 1887, which are sections 6307 and 6312 of Sand. & H. Digest, and are as follows:

"Sec. 7.    That all railroad corporations in this state shall [be] and are hereby required to keep posted up at every depot freight office under the control of, or used by, any such railroad corporation, in a conspicuous place therein, plainly and legibly printed schedules, which shall state: First, the different kinds and classes of property to be carried; second, the different places between which property shall be carried; third, the rates of freight and charges for carriages between such places and for all services connected with transportation of such property, from its receipt until it is delivered or forwarded, and each day of failure to post up such

printed schedule shall constitute a separate offense. Such schedule shall be posted at least five days before the same shall go into effect, and the same shall remain in full force until another schedule shall, as aforesaid, be posted. And every person and corporation engaged as aforesaid shall receive, load, unload, transport, store, and deliver to the consignee thereof any and all property offered for shipment at and for charges not greater than those specified in such schedule as may at the time be in force, and shall, on demand, issue to shippers duplicate freight receipts, which shall state the class of freight shipped, the weight, and charges, etc.

"Sec. 12. That any railroad corporation that shall violate the * * * * seventh * * sections of this act * * * * * shall forfeit and pay for every such offense any sum not less than fifty dollars nor exceeding one thousand dollars and costs of suit, to be recovered by a civil action *by the party aggrieved*, in any court having jurisdiction thereof, * * * but all such actions shall be brought within one year after the cause of action accrues, or within one year after the party complaining comes to the knowledge of his or her rights, and no such action shall be maintained unless it is alleged and shown that, before bringing his action, the party complaining brought the matter to the attention of the railroad company by a notice or statement of facts in writing, accompanied by the papers showing such violation, if any he has, and a demand for reparation, delivered to some agent of the railroad company, and that said railroad company, for fifteen days after the reception of said notice, neglected or refused to refund any overcharge or make other proper reparation."

Who may recover penalty for failure to post freight schedule.

The schedule mentioned is required to be posted for the benefit of those desiring and seeking to ship their property over railroads. So much of section 7 of the act as prohibits the charging of more than the rates

fixed by the schedule, and the information afforded by the posting, clearly indicates that this is its sole object. No other person can be benefited thereby, or injured by the failure to post.

But who is entitled to the penalty allowed by section 12 of the act for a failure to post the schedule? The statute says the party thereby aggrieved ; and that he is not, unless the railroad company neglects or refuses to make "proper reparation" within fifteen days after demand and notice has been made and given in the manner prescribed by law. The proper interpretation of the word "reparation," as used in this connection in section 12, will enable us to decide this question ; for no one to whom reparation is not due can be entitled to the penalty. What is meant by it?

No reparation can be made for a failure to post a schedule in the past by a present posting. The posting is for the purpose of affording information to those desiring and seeking to ship property after the posting. It can be of no service to any one as to shipments made. As to him no reparation can be made, except by compensation for the injuries he has suffered from the failure to post. Compensation, then, for injuries or wrongs suffered by reason of the failures to comply with the act to which penalties are annexed is what is meant by "reparation." Section 7 furnishes an illustration, and that is overcharges paid by the shipper through ignorance of the regular rates of freight caused by the failure to post the schedule. The refunding of the amount paid in excess of the regular rates and interest would be a proper reparation in that case. The shipper who has looked for the posted schedule, and failed to find it, may be injured by time lost and trouble incurred in the search, and may be entitled to compensation therefor, and to nominal damages if no actual injury has been suffered. Other examples, which are unnecessary to

mention, might be given, but those given are sufficient.

Sufficiency
of notice of
injury.

The obvious intention of the act is to give to the railroad company an opportunity to make reparation for all injuries caused by its failure to comply with it. For that purpose, the party aggrieved is required to give notice to the company of the violation of the injury received therefrom, and to demand indemnity therefor; and the company is given fifteen days in which "to refund any overcharge or make other proper reparation." The notice should specify wherein the company had violated the act, and the damages to the party aggrieved occasioned thereby; otherwise, it would fail to accomplish the object for which it is required, for the railroad company cannot make reparation until it is apprised of the injury and the extent of the damages. Hence, notice containing information sufficient to accomplish this purpose should be given. The intention of the act in this respect is to be just, and to afford to railroad companies ample opportunities of making adequate compensation for specified injuries before penalties can be imposed on them.

It follows, then, that the person desiring and seeking in good faith to ship, or who has shipped, his property over the railroad, and who has been injuriously affected by the neglect to post the schedule, and has made demand and given notice according to the act, and failed to receive adequate compensation for the injuries he has suffered from such neglect, is the party aggrieved and entitled to the penalty for the failure. No other person, that is to say, no one who has not been injuriously affected, can perform the conditions essential to a recovery of the penalty, and hence is not entitled to it.

The evidence fails to show that appellee is entitled to any relief, by way of a penalty, on account of the failure of appellant to post a schedule of rates at Nashville. He did not state in the notice given how he was

aggrieved by the failure to post, the extent of his griev-
ances, and the damages occasioned thereby. His notice
is fatally defective. He has not complied with the act,
and is not entitled to a penalty.

The judgment of the circuit court is, therefore,
reversed; and a final judgment is rendered by this court
in favor of appellant.